# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

BRANDY L. PROTTE,                )
                                 )
    Plaintiff(s),            )
                                 )
    vs.                      )    Case No. 4:20-CV-269 SRW
                                 )
ANDREW M. SAUL,                  )
Commissioner of Social Security  )
Administration,                  )
                                 )
    Defendant(s).            )

## MEMORANDUM AND ORDER

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in Support of the Complaint. ECF No. 28. Defendant filed a Brief in Support of the Answer. ECF No. 29. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

## I.    Factual and Procedural Background

On March 14, 2017, Plaintiff Brandy Lynn Protte protectively filed an application for supplemental security income ("SSI") under Title XVI, 42 U.S.C. §§ 1381, *et seq.* Tr. 111, 183-88.[1] Plaintiff's application was denied on initial consideration, and she requested a hearing

---

[1] The Court notes Plaintiff previously applied for supplemental security income on January 23, 2015, which resulted in a denial. A copy of the January 30, 2017 ALJ decision is included in the record. Tr. 72-88, 216.

before an Administrative Law Judge ("ALJ"). Tr. 94-111, 114-18, 121-23, 139, 273-74. Plaintiff originally filed her application with an alleged onset date of January 1, 2013, but later amended her application with a revised alleged onset date of March 14, 2017.[2] Tr. 94, 183, 199.

Plaintiff, with the assistance of an attorney, appeared for a hearing on November 19, 2018. Tr. 29-71. Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") Oliver James. *Id*. On February 25, 2019, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 10-28. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 180-83. On January 3, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-5. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.    Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

---

[2] As a result of Plaintiff's amended alleged onset date, the Court has not considered the medical records within the transcript dated prior to March 14, 2017. *See* Tr. 410-561.

2

any other kind of substantial gainful work which exists in the national economy[.]" *Id.* at §
1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the
claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the
claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is
not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner
looks to see whether "the claimant has a severe impairment . . . which significantly limits
[claimant's] physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734,
738 (8th Cir. 2010) (quoting 20 C.F.R. § 416.920(c)). "An impairment is not severe if it amounts
only to a slight abnormality that would not significantly limit the claimant's physical or mental
ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also*
20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the
impairment's medical severity. If the impairment meets or equals one of the presumptively
disabling impairments listed in the regulations, the claimant is considered disabled, regardless of
age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the
presumptively disabling impairments, the Commissioner assesses whether the claimant retains
the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§
416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do
despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir.
2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant

3

evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If the ALJ determines the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged amended onset date of March 14, 2017, and Plaintiff has the severe impairments of "major depressive disorder, generalized anxiety disorder, conversion disorder with seizures (pseudoseizures), obesity, allergic rhinitis, and degenerative disc disease." Tr. 15. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.* The ALJ found Plaintiff has the following RFC:

> [Plaintiff] has the residual functional capacity to perform less than full range of light work. She can lift 20 pounds occasionally and 10 pounds frequently; carry 20 pounds occasionally and 10 pounds frequently; sit for six hours, stand for six hours, walk for six hours, and push or pull as much as she can lift or carry. The [Plaintiff] can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, never balance, and she can stoop, crouch, or crawl and kneel occasionally. The [Plaintiff] can never work at unprotected heights, never work around moving mechanical parts, never work around open bodies of water, and never operate a motor vehicle. She should be exposed no more than occasionally to dust, odors, fumes and pulmonary irritants and vibrations. She should not work with sharp

> objects. She is able to perform simple, routine and repetitive tasks but not at a production-rate pace (e.g. assembly line work) in an environment with few changes in setting or duties. She can interact occasionally with supervisors and coworkers, but should be assigned no team or tandem tasks. She should never have to interact with the public. Finally, the claimant would be off task up to 10 percent of the workday due to her various symptoms.

Tr. 17-18. At Step Four, the ALJ found Plaintiff has no past relevant work. Tr. 22. The ALJ further found Plaintiff was born on October 7, 1976 and was 40 years old, which is defined as a younger individual age 18-49, on the date the application was filed. *Id*. Plaintiff has a limited education and is able to communicate in English. *Id*. at 23 The ALJ determined the transferability of job skills was not an issue because Plaintiff did not have past relevant work. *Id*. At Step Five, relying on the testimony of the VE and considering Plaintiff's age, education, work experience and RFC, the ALJ found there were jobs existing in significant numbers in the national economy which the Plaintiff could perform, including representative occupations such as routing clerk (*Dictionary of Occupational Titles* ("*DOT*") No. 222.687-022), addresser (*DOT* No. 209.587-014), and light housekeeping (*DOT* No. 323.687-014). Tr. 23. The ALJ concluded Plaintiff was not under a disability since March 14, 2017, the date the application was filed. Tr. 24.

## IV.    Discussion

Plaintiff challenges the ALJ's decision on one ground asserting the RFC is not supported by substantial evidence. ECF No. 28, at 40-52. Specifically, Plaintiff takes issue with the ALJ's assignment of weight to the observations of (1) Nicholas Brinkmann, Plaintiff's Integrated Health Specialist; (2) Dr. Bhaskar Gowda, Plaintiff's treating psychiatrist; and (3) Dr. Charles Watson, a non-treating, non-examining State Agency psychologist.

The ALJ assigned "some weight" to a one-page letter Mr. Brinkmann submitted to the Social Security Administration regarding his observations of Plaintiff's medical conditions and

6

"great weight" to the non-treating opinion of Dr. Watson. Tr. 20. The ALJ did not explicitly state what weight he attributed to Dr. Gowda but found his medical source statement to "not [be] fully consistent with the records, which established more moderate limitations." Tr. 21. Plaintiff argues the ALJ should have attributed greater weight to the opinions of Mr. Brinkmann and Dr. Gowda as they had an established treatment relationship with Plaintiff and their observations and evaluations were consistent with each other. Plaintiff further argues the ALJ should have attributed lesser weight to Dr. Watson who was not a treating or examining physician, and who only reviewed Plaintiff's medical record up through June 6, 2017 – less than three months after the onset of disability.

Plaintiff limits her argument to the ALJ's evaluation of her mental impairments, which includes major depressive disorder and generalized anxiety disorder. Plaintiff does not contest the ALJ's RFC evaluation of her other impairments, which include conversion disorder with seizures, obesity, allergic rhinitis, and degenerative disc disease. *See* ECF No. 28. Although the Court has reviewed the underlying record in its entirety, the Court will limit its discussion to the ALJ's RFC assessment of Plaintiff's mental impairments only.

The ALJ found Plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. Tr. 16-17. In making these determinations, the ALJ referred to Plaintiff's hearing testimony, Function Report, and select medical records. The ALJ also considered her own observations from the hearing, in which she indicated in her decision that "[Plaintiff] seemed to follow the procedure of her hearing without noticeable problem." Tr. 16.

The ALJ considered Plaintiff's testimony as to her history of racing thoughts, difficulties maintaining focus, and issues interacting with others, including authority figures. Tr. 16, 42, 58.

The ALJ noted Plaintiff's testimony regarding strained social interactions aligned with her February 14, 2018 and March 21, 2018 reports to Mr. Brinkmann in which she complained of difficulties getting along with her boyfriend, frustrations with her son, and issues with her daughter who "calls her a bitch and uses her." Tr. 16, 776, 800. In finding Plaintiff to have only moderate limitations in interacting with others, the ALJ referenced an August 30, 2018 record in which Plaintiff "reported no difficulties with living with her boyfriend." Tr. 16. The Court notes this assessment of this record to be inaccurate. To the contrary, the August 30, 2018 record indicated Plaintiff "is always getting into arguments with her boyfriend," "thinks he is cheating on her," and "is hoping to get disability so she can 'leave his ass.'" Tr. 733-734. On September 21, 2018, Plaintiff reported she was no longer speaking to her boyfriend despite their continued cohabitation. Tr. 16, 746.

The ALJ heard Plaintiff's testimony that she attended all special education classes in high school. Tr. 41-42. The ALJ noted a June 19, 2017 record from Pathways Community Health Family Counseling which indicated Plaintiff quit high school in the eleventh grade due to a pregnancy, although she felt she was doing "great in school." Tr. 16, 962. The ALJ was unable to consider Plaintiff's school transcripts because they were destroyed by the Crawford County R-I School District prior to the filing of her application for supplemental security income. *See* Tr. 209.

In determining Plaintiff has moderate limitations in her ability to concentrate, persist, or maintain pace, the ALJ relied on the fact that Plaintiff "did not testify to substantial concentration problems during the hearing." Tr. 16. The Court, however, finds the ALJ's assessment of Plaintiff's testimony to be inaccurate. Plaintiff explicitly testified she "can't focus for even just a short period of time" and needed Mr. Brinkmann to assist her in completing forms

for her disability filing. Tr. 42. Plaintiff also testified when she attempts to focus she "just want[s] to get up and just go do something else and then from there [she] want[s] to go do something else and then [her] mind starts racing" at which point she locks herself in her room. *Id.*

In further support of moderate concentration limitations, the ALJ cited to Plaintiff's Function Report which indicated she did "not need reminders to go places." Tr. 16, 230-32. The Court notes the Function Report also indicated that despite not needing reminders to go places, she did need to set alarms to remind her to take care of personal needs, such as grooming, and to take medication. Tr. 230. The ALJ did not mention her need to set alarms within her decision.

In determining Plaintiff has moderate limitations in understanding, remembering, or applying information, the ALJ cited to a June 14, 2017 progress report from Dr. Roger Rembecki, M.D., Plaintiff's treating gynecologist, who described her as having "normal thought content." Tr. 16, 679. The Court notes there is no support in the record, however, that her gynecologist had any involvement in evaluating or treating her mental health issues. The ALJ further cited to a June 6, 2017 record from Dr. Gowda which indicated Plaintiff had good memory and was oriented to person, place, day, and time, although her insight and judgment was poor. Tr. 16, 616. A June 19, 2017 record from Pathway Health Clinic recorded Plaintiff's Global Assessment of Functioning[3] ("GAF") score to be 42, which the ALJ acknowledged was

---

[3] A GAF score is a numerical summary of a clinician's judgment of an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health on a scale of one hundred. *See* Diagnostic and Statistical Manual of Mental Disorders, 32-34 (4th ed). According to the DSM-IV, GAF scores in the range of 41 to 50 denote "serious symptoms . . . [or] any serious impairment in social, occupational, or school functioning." "GAF scores may be relevant to a determination of disability based on mental impairments." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citing *Pates–Fires v. Astrue*, 564 F.3d 935, 944-45 (8th Cir. 2009)). However, "[i]n recent years, the [SSA] has recognized, and we have noted, that GAF scores have limited importance." *Nowling v. Colvin*, 813 F.3d 1110, 1115 n.3 (8th Cir. 2016) (citing *Jones v. Astrue*, 619 F.3d 963, 973-74 (8th Cir. 2010)).

"quite low." Tr. 20-21, 963. The ALJ gave little weight to the GAF score because it is "of limited use in assessing the severity and limiting effects of a claimant's mental impairments." Tr. 22.

The ALJ further cited to a July 24, 2017 record from Pathway Health Clinic which described Plaintiff to be "in a good mood" and indicated "therapy was working for her and that she was feeling good about going." Tr. 886. The ALJ considered Dr. Gowda's treatment notes from January 23, 2018, March 22, 2018, and October 2, 2018, which indicated Plaintiff had poor insight and judgment and markedly reduced psychomotor activity, despite having goal-directed thought flow and memory within normal limits. Tr. 16, 643, 651, 764. The ALJ noted that on February 8, 2018, Plaintiff stated she no longer wanted to continue individual therapy after a "long period without scheduling." Tr. 21, 958.

The ALJ cited to a one-page undated letter from Mr. Brinkmann identifying himself as Plaintiff's Integrated Health Specialist for approximately five years. Tr. 691. Within the letter, Mr. Brinkmann explained he accompanied Plaintiff to doctor appointments and performed weekly home visits for the purpose of working with her on treatment plan goals for depression, stress, anger, and anxiety management. Tr. 691. During the home visits, he observed Plaintiff having "trouble with things such as housework, lifting items, walking, standing, sitting, using her hands, personal hygiene or going alone to the grocery store," and "major anxiety and stress attacks due to normal situations like paying bills or what to cook for dinner." Mr. Brinkmann stated Plaintiff had a "hard time getting along with others due to being mentally and emotionally unstable" and she would "cry and have [an] outburst dependent on her mood." Tr. 691. The ALJ gave this letter "some weight" because "it [was] not precisely an opinion." Tr. 20.

The ALJ also cited to a June 6, 2017 state Disability Determination Explanation, which included a Mental Residual Functional Capacity Assessment, from Charles Watson, Psy.D. Tr.

10

94-108. Dr. Watson determined Plaintiff was not significantly limited in her ability to remember locations and work-like procedures; to understand and remember very short and simple instructions; carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and appropriate precautions; and set realistic goals or make plans independently of others. Dr. Watson further opined Plaintiff was moderately limited in her ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and travel in unfamiliar places or use public transportation. The ALJ found Dr. Watson's opinions to be consistent with the medical record and gave "great weight" to his assessment. Tr. 20.

On August 2, 2018, Dr. Gowda completed a medical source statement on Plaintiff's behalf. Tr. 664-66. In the statement, Dr. Gowda opined Plaintiff would miss 20 percent or more of an eight-hour workday due to issues related to remembering locations and work-like procedures; understanding and remembering very short and simple instructions; maintaining attention and concentration for extended periods; carrying out detailed instructions; performing

activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; sustaining an ordinary routine without special supervision; working in coordination with or in proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintaining socially appropriate behavior and adherence to basic standards of neatness and cleanliness; responding appropriately to changes in the work setting; awareness of normal hazards and taking appropriate precautions; traveling in unfamiliar places or using public transportation; and setting realistic goals or making plans independently of others. Dr. Gowda attributed these limitations to Plaintiff's consistent mood swings and further opined Plaintiff would miss two or more days of work per month due to psychologically based symptoms. The ALJ found these opinions were not fully consistent with the records, including Plaintiff's activities of daily living, which the ALJ understood to establish "more moderate limitations." Tr. 21. However, the ALJ did not expressly state what weight he attributed to the medical source statement or Dr. Gowda's underlying treatment notes.

In determining Plaintiff's RFC, the ALJ found it significant that "many of her psychological stressors have to do with her children and her living situation," such as "her boyfriend drinking too much alcohol, a dog biting her, and her father's serious illness," issues with a live-in friend, her dislike for her daughter's boyfriend, and her son's lack of employment. Tr. 22. The ALJ noted that while these "events and conditions are significant stressors, they are

12

not directly relevant to the claimant's ability to perform work" and are "not claimant-centered." *Id.* Moreover, the ALJ found it relevant that the record did not note significant limitations to her activities of daily living, including her ability to care for her ill father, clean her home, and take partial care of her son, daughter, and cousin's children. *Id.*

While the Court agrees the underlying record reflects the causes of Plaintiff's many stressors were due, in part, to the behavior of third parties, the ALJ's decision fails to address portions of the record related to Plaintiff's general irritability and depressive symptoms aside from her familial issues. For example, a Wellness Plan Assessment recorded Plaintiff's statement that her "couch is [her] best friend during the day" because she feels drained and gets irritated quickly. Tr. 568. Plaintiff testified some days she wakes up depressed and has to avoid people because "if they look at [her] wrong or anything, [she] could just black out and say stuff that [she doesn't] mean." Tr. 52-53. On October 2, 2018, Plaintiff reported to Dr. Gowda that she was "irritable all of the time and snapping at everyone" and believed her Ativan was no longer helping her with anxiety. Tr. 762. Moreover, there are numerous records documenting her history of mood swings. *See e.g.*, Tr. 653, 658, 691, 762.

After a careful and thoughtful review, the Court finds the ALJ failed to properly evaluate the record as a whole in determining Plaintiff's RFC and failed to provide good reasons for the weight he assigned to her treating psychologist, Dr. Gowda, and the opinion of her caseworker, Mr. Brinkmann. Notably, Plaintiff's medical records from 2017 through 2018 span over 500 pages, and the ALJ's opinion explicitly addresses only 13 records related to Plaintiff's mental impairments.

A claimant's RFC is the most an individual can do despite the combined effects of all of her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on *all of the*

*record evidence*, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p.

"Under the [Social Security Administration's] regulations, an ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."[4] *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). A treating physician's opinion normally is entitled to substantial weight. *Dixon v. Barnhart*, 353 F.3d 602, 606 (8th Cir. 2003). Unless a treating physician's opinion is given controlling weight, the ALJ should consider each of the following factors in evaluating every medical opinion: (1) the length of the treatment relationship; (2) the nature and extent of the treatment relationship; (3) the quantity of evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the treating physician is also a specialist; and (6) any other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(d)(1)-(6).

Regardless of how much weight the ALJ affords a treating physician's opinion, the ALJ must "always give good reasons" for the weight given. 20 C.F.R. § 404.1527(d)(2); SSR 96–2p, 1996 WL 374188, at *5 (SSA July 2, 1996); *accord Dolph v. Barnhart*, 308 F.3d 876, 878-879 (8th Cir. 2002). Failure to provide good reasons for discrediting a treating physician's opinion is

---

[4] Plaintiff's application was filed ***prior to*** March 27, 2017, and the ALJ was required to assign Plaintiff's treating physician specific evidentiary weight. *See* 20 C.F.R. § 404.1520c (claims filed on or after March 27, 2017 are subject to a new rule which provides that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources" although the same factors in evaluating a medical opinion will remain the same).

a ground for remand. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see Singh v. Apfel*, 222 F.3d 448, 452-53 (8th Cir. 2000) (reversing with directions to remand in part because the ALJ failed to give good reasons for rejecting a treating physician's opinion); *Knudsen v. Barnhart*, No. C02-4108, 2003 WL 22959818, at *25 (N.D. Iowa Dec. 16, 2003) (the ALJ failed to justify adequately his decision to discount the treating physicians' opinions); *Selk v. Barnhart*, 234 F.Supp.2d 1006, 1013 (S.D. Iowa 2002) (same).

Considering the record as a whole, the Court concludes substantial evidence does not support the ALJ's assessment of Dr. Gowda's medical opinion. In comparing the ALJ's decision to Dr. Gowda's treatment notes, it appears the ALJ selected certain language from Dr. Gowda's treatment notes to support the RFC findings while ignoring indications of more severe mental health symptoms. For example, while the ALJ correctly noted Dr. Gowda regularly described Plaintiff as having goal-oriented thoughts and a good memory, the ALJ failed to address the remainder of her progress notes which often described Plaintiff as a depressed and anxious patient. For example, on April 7, 2017, Plaintiff stated she felt "hopeless and helpless all the time." Tr. 582. Dr. Gowda consistently indicated Plaintiff's psychomotor activity appeared markedly reduced and was participating in anger management and cognitive behavior therapy as a result of her depressive disorder and anxiety disorder diagnoses. Tr. 584-85, Tr. 612-13, 616-17, 621, 626, 631, 635, 639, 643, 647, 651, 656, 661. On April 27, 2017, September 14, 2017, and February 22, 2018, Plaintiff described issues with sleeping, poor energy, low motivation, and progressively worse "racing thoughts." Tr. 606, 623, 644. On May 25, 2017, Plaintiff stated she had a difficult time motivating herself to perform routine work and cope with any work situation. Tr. 610. On July 6, 2017, Plaintiff reported increased stress, anxiety, and sadness. Tr. 619. On November 9, 2017, December 7, 2017, and December 21, 2017, Plaintiff exhibited increased

anger and tended to get agitated and fight with "everyone," had racing thoughts, and low motivation. Tr. 628-29, 632, 636. On December 7, 2017, Plaintiff expressed a desire to physically hurt her son's father, and on February 22, 2018, she relayed thoughts of hurting others. Tr. 633, 645. On March 22, 2018, Plaintiff stated she had a "hard time coping with her anger outbursts." Tr. 648. On May 8, 2018, Plaintiff reported increased mood swings and a lack of energy. Tr. 653-54. On June 5, 2018, Plaintiff continued to complain of increased anxiousness, irritability, low energy, and difficulty managing her "anger outbursts." Tr. 658. On October 2, 2018, Plaintiff reported "getting irritable all the time and snapping at everyone." Tr. 762. She also felt as if her anti-anxiety medication was not working. *Id.*

Nowhere in the decision does the ALJ explicitly state the weight attributed to Dr. Gowda's treatment notes *or* her August 2, 2018 medical source statement. In the medical source statement, Dr. Gowda opined Plaintiff would miss 20 percent or more of an eight-hour workday due to difficulties understanding and remembering, sustaining concentration, interacting socially, and adapting. Tr. 664-666. This opinion is critical because the VE testified "that employers will not tolerate on average if someone is off task 20 percent or more of the time." Tr. 67. The ALJ wrote Dr. Gowda's opinion was "not fully consistent with the records, which establish more moderate limitations." Tr. 21. However, the ALJ did not explicitly cite to any specific inconsistent medical records. The ALJ also appeared to ignore the length, nature, and extent of the treatment relationship between Plaintiff and Dr. Gowda, a specialist in mental health conditions.

The only inconsistency the ALJ pointed to was Plaintiff's activities of daily living which included her ability to care for a sick father, clean her house, and take partial care of her son, daughter, and cousin's children. Tr. 22. The ALJ opined that these activities were inconsistent

16

with Dr. Gowda's medical source statement. Tr. 22. However, the Court finds the record as a whole documents Plaintiff's struggles and failures as a caretaker. For example, Plaintiff stated "she has trouble taking care of herself" let alone others, Tr. 741; records document a turbulent relationship between herself and her daughter, Tr. 416, 558, 800, 804, 934; and on numerous occasions plaintiff reported she regularly argues with her son or wants to kick him out of her home, Tr. 515, 539, 541, 546-47, 549, 551, 572, 578, 580, 588, 758, 786, 792. Plaintiff testified at her hearing that when she tried to be a personal care aide for her father she would "get upset" and yell at him. Tr. 56. She also stated when she had to give him reminders, she would ask someone else to do it to avoid an argument. Tr. 57. Consequently, the evidence in the record as a whole does not support Plaintiff's ability to care for her family as the ALJ suggests and supports Dr. Gowda's opinion of Plaintiff's mental limitations.

The Court is cognizant "an ALJ is not required to discuss every piece of evidence submitted," *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998), and acknowledges the administrative transcript in this case exceeds one thousand pages. Nonetheless, the ALJ was still required to give good reasons for the weight given to Dr. Gowda's opinion. Because the ALJ failed to indicate the weight given to Dr. Gowda's opinion, much less provide good reasons for the weight given, remand is necessary. Therefore, the Court will remand this case to the ALJ to reassess Dr. Gowda's treatment notes and medical source statement to determine whether these opinions are inconsistent with the evidence in the record as a whole and how it affects, if at all, Plaintiff's RFC. Included in the ALJ's opinion should be a discussion of how Plaintiff's role as a caretaker for her father, children, and cousin's children supports her ability to work when the record appears to document the significant difficulties Plaintiff experienced in assuming a caretaker role.

As to Mr. Brinkmann, the ALJ assigned "some weight" to his undated letter describing Plaintiff as emotionally and mentally unstable because "it is not precisely an opinion." Tr. 20. The Court acknowledges case workers are not medical sources and cannot provide medical opinions:

> Social Security separates information sources into two main groups: acceptable medical sources and other sources. It then divides other sources into two groups: medical sources and non-medical sources. Acceptable medical sources include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, (2) only acceptable medical sources can provide medical opinions, and (3) only acceptable medical sources can be considered treating sources[.]

*Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (emphasis in original) (internal citations omitted). Medical sources include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists." 20 C.F.R. § 404.1513(d).[5] Information from "other sources cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose." SSR 06-03P, 2006 WL 2329939. Further, other sources are not entitled to controlling weight. *LaCroix v. Barnhart*, 465 F.3d 881, 885-86 (8th Cir. 2006).

"[I]nformation from such 'other sources,' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Sloan*, 499 F.3d at 888 (quoting 20 C.F.R. § 404.1513(d)). "Evidence provided by 'other sources' must be considered by the ALJ; however, the ALJ is

---

[5] The Commissioner updated regulations pertaining to medical evidence, which included rescinding several Social Security Rulings, including 06-3p and 96-2p, effective March 27, 2017. *See* 82 Fed. Reg. 16,869 (April 6, 2017) (clarifying effective date of rescission notice published at 82 Fed. Reg. 15,263 (March 27, 2017)). However, because those changes are in effect only for cases filed after that date, they do not apply to this case, which was filed on March 14, 2017.

permitted to discount such evidence if it is inconsistent with the evidence in the record." *Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015); *see also Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (in determining what weight to give to other evidence, the ALJ has more discretion and is permitted to consider any inconsistencies found within the record). The ALJ is required to consider Mr. Brinkmann's information in evaluating Plaintiff's impairments.

In this case, the record not only contains the one-page letter written by Mr. Brinkmann, but also numerous underlying progress reports documenting his observations of Plaintiff as her caseworker for a five-year period. The ALJ did not appear to consider any of Mr. Brinkmann's progress notes in the decision. For example, on March 14, 2017 and March 21, 2017, Mr. Brinkman accompanied Plaintiff to the social security office in which he described her difficulties speaking with the representative and his need to assist her through the process. Tr. 562-65. On April 7, 2017, April 18, 2017, and February 22, 2018, Mr. Brinkman accompanied Plaintiff to her appointment with Dr. Gowda in which he needed to help facilitate the conversation and repeat things to Plaintiff as she had trouble understanding the doctor. Tr. 586, 590, 788. Mr. Brinkmann described Plaintiff as "upset and depressed." Tr. 587. On June 12, 2018, Mr. Brinkmann noted Plaintiff's increased stress and propensity for crying spells. Tr. 694. On June 20, 2018, Plaintiff told Mr. Brinkman she was "almost ready to give up." Tr. 700. On June 25, 2018, Mr. Brinkmann described Plaintiff as "a mess," and he worked with her on how to not catastrophize situations. Tr. 704. On July 10, 2018, Plaintiff felt as if "she could crack at any moment." Tr. 712. On July 31, 2018, Plaintiff stated she had been crying "for days," was overwhelmed, and unable to handle stress. Tr. 723. On August 8, 2018, Plaintiff stated she was "sick with stress." Tr. 727. On August 20, 2018, Plaintiff stated "she feels that she may need to check herself into the hospital if [the stress] does not calm down." Tr. 731. On October 2, 2018,

19

Mr. Brinkmann accompanied Plaintiff to an appointment with Dr. Gowda where she cried and reported she was "barely keeping her head up." Tr. 749. Mr. Brinkmann's observations appear to be consistent with Dr. Gowda's progress reports and medical source statement documenting Plaintiff's frequent and debilitating mood swings.

The Court will remand this case to the ALJ to assess the information in Mr. Brinkmann's progress notes and intervention attempts in order to determine whether such evidence is inconsistent with the evidence in the record or whether the evidence provides insight into the severity of the Plaintiff's mental impairments and how it affects her ability to function.

Lastly, as to Dr. Watson's opinion, the ALJ attributed it "great weight." Tr. 20. Dr. Watson is a State Agency Consultant who submitted a report to the Social Security Administration on June 6, 2017. Tr. 94-108. Dr. Watson determined Plaintiff was not significantly limited in many areas. Non-treating, non-examining sources do not constitute substantial evidence upon which the ALJ can rely. *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Dr. Watson did not treat or examine Plaintiff, and his report was completed only three months after her alleged onset date. Consequently, Dr. Watson did not review relevant medical records from the remainder of 2017 and all of 2018. In assigning Dr. Watson's opinion "great weight," the ALJ states the records after June 6, 2017 support Dr. Watson's opinion of mild limitations; however, the ALJ does not cite to the records she finds to be supportive and, in the Court's independent review of the medical record, no such records were discovered. The Court will, therefore, remand this case to the ALJ to reassess Dr. Watson's opinion and detail how his proffered limitations are consistent with specific evidence in the record as a whole and how it affects, if at all, Plaintiff's RFC.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is

**REVERSED,** and this case is **REMANDED** under 42 U.S.C. 1383(c)(3) and Sentence Four of 42

U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

So Ordered this 13th day of May, 2021.


*/s/ Stephen R. Welby*
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE